394 A.2d 497

**COMMONWEALTH of Pennsylvania**

**v.**

**Randall Hoyt CHUMLEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 26, 1978.

Decided Nov. 18, 1978.

628

632

Dominick Motto, New Castle, Court-appointed, for appellant.

Donald E. Williams, Dist. Atty., New Castle, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant pled guilty to murder generally. After a degree of guilt hearing, appellant was convicted of murder of the second degree and on November 2, 1976, was sentenced to life imprisonment. New counsel was appointed to assist appellant in taking an appeal. On August 15, 1977, we remanded to the Court of Common Pleas of Lawrence County for an evidentiary hearing on effectiveness of trial counsel and to allow appellant to file a petition to withdraw his guilty plea as if timely filed. After a consolidated hearing pursuant to both orders, the trial court denied appellant's motion to withdraw his guilty plea and held that trial counsel was not ineffective. Appellant now appeals and we affirm.[1]

---

1. We hear this case pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1978).

Appellant and an accomplice, Gene Reno, entered the home of the victim, Mrs. Merriman, during the night of April 29–30, 1976, to steal money. During the course of their search of the house, Mrs. Merriman awoke. Appellant inflicted multiple blows upon Mrs. Merriman, resulting in her death. The next night, Reno was arrested on unrelated charges. He later made a statement implicating himself in the burglary and stated that appellant was responsible for Mrs. Merriman's death. On the basis of this statement, an arrest warrant was issued and appellant was apprehended on May 2, 1976.

## I

In *Commonwealth v. Willis*, 471 Pa. 50, 369 A.2d 1189 (1977), we held that inquiry into six areas is mandatory in every guilty plea colloquy.[2] Failure to inquire into defendant's understanding of these subjects generally requires reversal. Accord, *Commonwealth v. Kulp*, 476 Pa. 358, 382 A.2d 1209 (1978); *Commonwealth v. Dilbeck*, 466 Pa. 543, 353 A.2d 824 (1976). Our first inquiry is whether appellant understood the nature of the charges against him. Appellant was charged with murder generally. By his plea he subjected himself to conviction for any degree of criminal homicide, including murder of the third degree. Appellant contends that the trial court's explanation of the mens rea element of murder of the third degree was erroneous and therefore inadequately informed him of the nature of the

**2.** These six questions are stated in the comment to Pa.R.Crim.P. 319(a):

"(1) Does the defendant understand the nature of the charges to which he is pleading guilty?

(2) Is there a factual basis for the plea?

(3) Does the defendant understand that he has the right to trial by jury?

(4) Does the defendant understand that he is presumed innocent until he is found guilty?

(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreements?"

charges against him. Appellant argues that the trial court incorrectly informed him that legal malice exists where there is a specific intent to kill and thus "could have lead [sic] him to believe that an intentional killing is murder in the third degree instead of murder in the first degree."

The trial court instructed appellant that legal malice was an essential element of third degree murder and that:

"Legal malice consists either of a specific intent to inflict great bodily injury or from a wickedness of disposition, a hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty indicating an unjustified disregard for the probability of death or great bodily harm and an extreme indifference to the value of human life."

The court then went on to explain:

"Murder in the third degree embodies all of the elements of murder in the first degree with the exception that the mental element need not be a specific intent to kill as it does for murder in the first degree. Do you understand that?

Mr. Chumley: Yes.

\* \* \* \* \* \*

The Court: In summary, if a Defendant is responsible for unlawfully causing the death of the victim and did act with legal malice, either expressed or implied, that will constitute murder in the third degree even though there was no actual intention to injure or kill the particular person who was killed, and even though the death was unintentional or accidental. Murder of the third degree embraces cases where no actual intention to kill exists but where the frame of mind called legal malice prevails. Do you understand that?

Mr. Chumley: Yes."

This colloquy could not have misled appellant into believing that a specific intent to kill was required for murder of the third degree. The guilty plea colloquy in this respect clearly met the requirements of *Commonwealth v. Ingram,*

455 Pa. 198, 316 A.2d 77 (1974) (record must disclose element of offenses charged, outlined in understandable terms) and the comment to Rule 319(a). See also *Commonwealth v. Tabb*, 477 Pa. 115, 383 A.2d 849 (1978). Compare *Commonwealth v. Jasper*, 472 Pa. 226, 372 A.2d 395 (1976) (colloquy invalid where defendant led to believe he could be convicted only of voluntary manslaughter).

Appellant next contends that the colloquy failed to set forth a factual basis for the plea. Ascertainment of whether a factual basis exists is a mandatory area of inquiry under *Willis*, supra. See also *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *Commonwealth v. Campbell*, 451 Pa. 465, 304 A.2d 121 (1973); *Commonwealth v. Maddox*, 450 Pa. 406, 300 A.2d 503 (1973); Pa.R.Crim.P. 319(a); ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 4.2 (Approved Draft, 1972); ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty § 1.4 (Approved Draft, 1968).

The record of the colloquy indicates the following exchange:

"The Court: Do you admit that you specifically participated in the striking of multiple blows about the head, arms and body with a tire iron or hand gun or some other solid instrument?

Mr. Chumley: Yes."

Appellant argues that since this statement does not identify the victim or make any admission as to appellant's mens rea it does not set forth an adequate factual basis. In support of this position appellant cites *Commonwealth v. Thompson*, 466 Pa. 15, 351 A.2d 280 (1976), in which we held the colloquy insufficient where pursuant to a plea of guilty of murder generally, no attempt was made to elicit any of the circumstances surrounding the murder other than that the defendant fired the shot that killed the victim. No admissions relevant to the element of malice were made by the defendant. Moreover, the defendant had made a pre-trial

statement in which he asserted that he killed the victim in self-defense.

The inadequacies in the *Thompson* colloquy cannot be found here. Appellant at no time during the colloquy, or prior thereto, made any statements or assertions that indicated he was innocent of the crime with which he was charged or had some other defense. In *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974), we held that the appellant's admission that he "shot and killed" the victim was adequate to establish a factual basis. We further explained:

> "Although there is no specific admission of intent or malice, the court below could infer the requisite malice from the *unexplained* shooting.[3] Moreover, the 'factual basis' requirement does not mean that the defendant must admit every element of the crime." (emphasis in original)
>
> "[3] We have previously held that a *jury* may infer malice from evidence that the defendant shot the victim even where the defendant asserts that the shooting was accidental. See *Commonwealth v. Whitaker*, 440 Pa. 143, 269 A.2d 886 (1970). Where, however, the defendant offers some exculpatory explanation prior to a guilty plea, his version of the event goes to the issue of the voluntary and understanding nature of the plea itself and not, as in the Whitaker situation, to the question of sufficiency of evidence. Under these circumstances the defendant's 'excuse' should alert the judge to conduct an especially diligent examination to ascertain that the defendant wishes to plead guilty in spite of possible meritorious defenses or mitigating factors."

Id., 455 Pa. at 202, 316 A.2d at 79.

Moreover, in the context of the entire guilty plea colloquy, appellant's admission was not as ambiguous as appellant would represent. At the beginning of the colloquy, the court read the indictment which set forth specific allegations of fact regarding the killing and the surrounding circumstances. Appellant affirmatively indicated that he understood the charges in light of the alleged conduct. Employing the same language quoted above, the indictment clearly stated that the specific conduct which appellant later in the colloquy admitted to was the cause of Mrs. Merriman's death on the night in question. Thus, an examination of the colloquy as a whole leaves no doubt that an adequate factual basis was established.

■ Appellant also argues that an on the record discussion among the court and counsel as to the applicability of Pa.R.Crim.P. 319A caused confusion in the colloquy and resulted in its inadequacy with regard to ensuring that appellant understood the possible range of punishment to which his plea subjected him. We find no merit in this claim. The discussion centered around whether the death sentence could be imposed upon a defendant who was convicted of murder of the first degree after pleading guilty. There was clearly cause for confusion since a change in the Rules of Criminal Procedure was to become effective between the time appellant entered his plea and the time sentencing would take place. The trial court apparently reached the conclusion that the new rule, allowing capital punishment after a guilty plea, would be inapplicable to appellant's case and clearly informed appellant that the maximum sentence that could be imposed would be life imprisonment even if he was found guilty of murder of the first degree at the evidentiary hearing. Appellant indicated on the record that he understood. Thus the colloquy adequately demonstrated that appellant understood the range of sentences to which he was subject. Compare *Commonwealth v. Kulp*, supra.

## II

■ Appellant's next several claims also challenge the sufficiency of the colloquy to assure the validity of his plea of guilty. All of these claims address areas of inquiry not expressly required by the comment to Rule 319(a) which sets forth the minimum requirements for a guilty plea colloquy. Compliance with those minimum requirements, however, does not automatically guarantee that the colloquy was adequate to establish a voluntary and intelligent waiver of constitutional rights.

■ Appellant first claims that the colloquy failed to establish that he understood all the rights he waived by entering a guilty plea. Appellant argues that the colloquy was invalid because the trial judge failed to inquire whether

he understood that he was waiving his right to a nonjury trial. On this record we reject appellant's claim. Neither the comment to Rule 319(a) nor our case law requires that specific inquiry be made into this area. Moreover, the colloquy clearly instructed appellant that, as well as giving up his right to trial by jury, he was waiving the rights otherwise associated with trial. Appellant was properly informed that he was waiving his right to go to trial, his right to the presumption of innocence, his privilege against self-incrimination, the right to call and confront witnesses and to compel them to testify if necessary, and the right to enter a plea of not guilty.

The fact that the trial court inquired into all these areas is dispositive of appellant's general allegation that the trial court failed to inform him of what rights he waived by entering the guilty plea. Appellant's contention that this portion of the colloquy was misleading as to his rights at the degree of guilt hearing must also fail. Appellant was specifically told that at the hearing he could introduce evidence that his culpability rose no higher than murder of the third degree, confront Commonwealth witnesses, and call witnesses on his own behalf.

Appellant further claims the colloquy was inadequate because the court failed to inform him of the extent of his appellate rights after the guilty plea. A guilty plea is a waiver of those rights associated with trial. Knowledge of the extent of appellate rights is not necessary to validate such a waiver. The absence of this information in the colloquy, therefore, did not render appellant's plea unknowing or involuntary. Appellant was properly instructed as to his appellate rights and the procedure for pursuing them at his sentencing. See Pa.R.Crim.P. 1405(c).

Appellant also urges us to reverse because of the court's failure to inform him of how, when, or under what circumstances the plea could be withdrawn. This claim too is without merit. Knowledge of the procedural aspects of the right to withdraw the plea does not bear upon whether it

was voluntary in the first instance. Finally, appellant was instructed that should the trial court fail to accept the terms of the plea bargain agreement and find that he was guilty of murder of the first degree he would be entitled to withdraw his plea as of right pursuant to Pa.R.Crim.P. 319(b)(3) ("If thereafter the judge decides not to concur in the plea agreement, he shall permit the defendant to withdraw his plea.").

Appellant proposes further that the court erred in failing to inquire whether he was taking medication which would affect his ability to knowingly enter a plea and whether he was able to read and understand English. In the absence of any allegation that the validity of appellant's plea was actually affected by either of these factors, these claims are without merit. Also without merit is appellant's contention that the court failed to inquire into appellant's background to ascertain whether his education was adequate for him to understand the proceedings. In response to specific questions put to him early in the colloquy appellant stated that he was nineteen and had left school two years earlier while in the eleventh grade. Finally, appellant alleges that the colloquy was defective in failing to demonstrate that he voluntarily, intelligently, and understandingly waived his constitutional rights. The foregoing discussion and the twenty-two page transcript of the colloquy clearly reveal that appellant's plea was entered voluntarily, knowingly, and understandingly. Appellant's conviction, therefore, cannot be reversed on the basis of the guilty plea colloquy's inadequacy.

### III

Appellant also claims that he is entitled to a new trial because trial counsel were ineffective. Appellant's claims of ineffectiveness must be evaluated in the context of his guilty plea. Upon entry of a plea of guilty, all grounds of appeal are waived other than challenges to the voluntariness of the plea and the jurisdiction of the sentencing court. *Commonwealth v. Greer*, 457 Pa. 646, 326 A.2d 338 (1974).

Thus allegations of ineffective assistance of counsel in connection with entry of the guilty plea will serve as a basis for relief only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea. See *Commonwealth v. Jones*, 477 Pa. 266, 383 A.2d 926 (1978); *Commonwealth v. Bunch*, 466 Pa. 22, 351 A.2d 284 (1976).

Appellant argues that trial counsel were ineffective for failing to file motions to suppress evidence obtained in the course of three separate searches and seizures. In *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604–605, 235 A.2d 349, 352–53 (1967), we held:

"[C]ounsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis." (emphasis in original).

If on the face of the record the motions to suppress would have been totally frivolous we need not reach the issue of whether counsel had some other reasonable basis for failing to file the motions. Counsels' failure to file frivolous motions cannot support a claim that counsels' "ineffectiveness" induced the plea and rendered it invalid. See *Commonwealth v. Gaston*, 474 Pa. 218, 378 A.2d 297 (1977).

Appellant contends that the May 1, 1976, and May 27, 1976, search warrants are invalid because they do not conform to Pa.R.Crim.P. 2006. Rule 2006 states that applications for search warrants should be "substantially" in the form recommended by the rule. The rule suggests a form in which the warrant and affidavit are each on a separate page. Each page is to be separately signed and sealed by the issuing authority.

642

■ The applications for search warrants in this case were on JP Criminal Form 74–2006. The affidavit and warrant are both contained on one sheet of paper which the magistrate must sign and seal at the bottom. Appellant argues that this single jurat does not guarantee that the affiant's signed written statement was made under oath and that the warrants are therefore defective. The same argument was correctly rejected by the Superior Court in *Commonwealth v. Lardo*, 240 Pa.Super. 107, 368 A.2d 324 (1976) (Form 74–2006 in substantial compliance with Rule 2006). Trial counsel therefore cannot be held ineffective for failing to file a motion to suppress.

■ Appellant argues further that trial counsel should have moved to suppress the May 1 and May 27 searches because there was no showing of probable cause upon which to base the warrants. The May 1, 1976, warrant authorized a search of the apartment of Gene Reno, appellant's accomplice. Apparently, appellant was also living in Reno's apartment at the time. The warrant was issued after Reno had been arrested on other charges. The affidavit recites, inter alia, that three officers observed Reno's tennis shoes and "believed" that the tread markings were identical to tracks observed at the scene of the homicide. Appellant claims that the statement that the markings were "believed" identical is insufficient to support a finding of probable cause. A motion to suppress filed on the theory that the affidavit should have alleged that the markings "were" identical would have been frivolous and trial counsel were not ineffective for failing to file such a motion.

■ The affidavit in support of the May 1 warrant also recited that Reno informed the affiant that the premises for which the warrant was sought was his residence and that the key found on his person was for that apartment. Appellant argues that because the affidavit fails to set forth any facts upon which to conclude that Reno was reliable as required by *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the search was

invalid. The situation here is different from that of an informant for whom reliability must be established under *Aguilar* and *Spinelli*. The warrant was sought in respect to an ongoing investigation of Reno's complicity in the burglary and homicide, not of appellant. At that point the police were ignorant of appellant's connection with the homicide or Reno's apartment. A suspect's declarations as to his residence are certainly worthy of belief when used to establish probable cause to search pursuant to an investigation of that suspect. Thus, it must be concluded that trial counsel were correct in their belief that no grounds existed upon which to suppress evidence seized pursuant to the May 1 search warrant.

Appellant also argues that trial counsel should have moved to suppress the May 27 search because as in the earlier warrant, the reliability of the informant, Gene Reno, was not established in the affidavit. Pursuant to this warrant, and in trial counsel's presence, blood, hair, and spittle samples were taken from appellant. The affidavit in support of that warrant recited that Reno had admitted his participation in the burglary of the victim's home and stated that Reno was accompanied by appellant who beat the victim. Reno's statement constituted a declaration against his penal interest and was sufficient to insure his reliability. See *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Commonwealth v. Matthews*, 446 Pa. 65, 285 A.2d 510 (1971). Cf. *Commonwealth v. Bradley*, 449 Pa. 19, 22, 295 A.2d 842, 844 (1972) (probable cause to arrest established by information supplied by confessed accomplice). Trial counsel were not rendered ineffective by concluding there was no basis upon which to suppress the May 27 search.

The third search appellant contends trial counsel should have challenged occurred at the time appellant was arrested. Appellant was taken into custody on the front porch of his mother's house. Immediately thereafter, police obtained appellant's mother's consent to search her house. During the ensuing search a number of items of clothing

were seized from appellant's bedroom in the house. Appellant does not allege that his mother lacked authority to consent to the search of "his room." Nor does he contest the validity of the search and seizure in any other respect. Moreover, the items seized had no connection whatsoever with appellant's alleged criminal activity and were of no evidentiary value to the prosecution or the defense. On these facts trial counsel were not ineffective for failing to file a motion to suppress the evidence seized from appellant's mother's house.

██ Appellant also claims that trial counsel were ineffective because they gave him erroneous advice regarding the defensive use of intoxication and drugged condition. Trial counsel testified that upon learning that appellant had been drinking and using drugs prior to the burglary and homicide they researched the law relating to voluntary intoxication. In the course of their research they discovered that under 18 Pa.C.S.A § 308 voluntary intoxication or drugged condition is not a defense to a criminal charge but may be offered into evidence to reduce murder from a higher to lower degree. Appellant admits that the statute was explained to him prior to the entry of his guilty plea. He alleges, however, that trial counsel never discussed with him the use of intoxication as a mitigating factor at the degree of guilt hearing and that trial counsel were ineffective for failing to introduce evidence of his intoxication at that time. At the degree of guilt hearing counsel attempted to cross-examine Gene Reno on the question of whether appellant was intoxicated. Reno, however, was extremely uncooperative and the line of questioning proved to be fruitless. At the evidentiary hearing on ineffectiveness, trial counsel testified that they believed they could go no further in proving intoxication or drugged condition since appellant refused to testify at the degree of guilt hearing. Appellant does not now dispute the accuracy of this conclusion. The record shows that appellant was given correct advice with regard to the defensive use of voluntary intoxication. Thus this claim of ineffectiveness must also fail.

Appellant's next allegations surround his petition for appointment of replacement counsel, filed the day after he first met with his court-appointed trial counsel. At the initial interview with trial counsel appellant questioned counsels' qualifications and experience. Appellant then informed trial counsel that he had *no confidence in their* abilities and asked them to file a petition suggesting that George P. Micacchione, Esq. be appointed as replacement counsel. The petition filed on May 11, and signed by appellant, alleged, inter alia:

> "5. That your petitioner has met with appointed counsel and is dissatisfied with said counsel, lacks confidence in said counsel and believes that he cannot be adequately represented by said counsel.
>
> 6. Your petitioner has great confidence in the abilities of George P. Micacchione, Esquire and desires that the said George P. Macacchione be appointed by the Court to represent him in these proceedings."

At the post-trial evidentiary hearing appellant admitted he directed that item number six be included in the petition. Testimony at the hearing also indicated that appellant became progressively more cooperative with trial counsel as time went on.

■ Appellant argues that trial counsel were ineffective for failing to allege in the petition for replacement counsel that "irreconcilable differences" existed between himself and trial counsel. Moreover, he contends that since such irreconcilable differences did exist he was entitled to replacement counsel as a matter of law. To support his theory that he is entitled to a new trial appellant relies upon *Commonwealth v. Tyler*, 468 Pa. 193, 360 A.2d 617 (1976) in which we held that where immediately prior to trial, irreconcilable differences with regard to the manner in which the trial should be conducted existed between defendant and his attorney, the trial court abused its discretion when it refused to appoint new counsel.

This case is distinguishable from *Tyler*. Appellant's petition for replacement counsel was filed the day after his first

meeting with his court appointed trial counsel. Trial counsel had not yet represented appellant at any preliminary proceedings nor had they even begun to consider trial strategy. Finally, there was no evidence at the post-sentencing evidentiary hearing that irreconcilable differences of the nature found in *Tyler* ever arose between appellant and trial counsel. That evidence indicates that at the most a personality conflict arose between appellant and attorney Crowley, primarily because of appellant's initial hostility to his court-appointed attorneys. The testimony at the evidentiary hearing clearly reveals, however, that this mutual dislike had no effect on counsel's representation of appellant.

Thus, clearly the sort of "irreconcilable differences" found in *Tyler* were not present here. Trial counsel therefore cannot be held ineffective for failing to allege in the petition for replacement counsel that "irreconcilable differences" existed.

 Moreover, trial counsel cannot be found ineffective for including point number six in the petition for replacement counsel. The suggestion that George P. Micacchione, Esquire, be appointed in their stead was included at appellant's request. It was from this portion of the petition that the trial court reached its conclusion that appellant's dissatisfaction with appointed counsel stemmed primarily from his preference for Attorney Micacchione.[3]

---

**3.** The trial court's conclusion was clearly justified. While an indigent is entitled to free counsel, he is not entitled to free counsel of his own choosing. *Commonwealth v. Johnson*, 428 Pa. 210, 236 A.2d 805 (1968). "Whether a petition for change of court-appointed counsel should be granted is within the sound discretion of the trial court." *Commonwealth v. Segers*, 460 Pa. 149, 331 A.2d 462 (1975). "A motion for change of counsel by a defendant to whom counsel has been assigned shall not be granted except for substantial reasons." Pa.R.Crim.P. 316(c)(ii). The trial court did not abuse its discretion when it concluded that appellant's desire for a particular attorney was not good cause for appointment of counsel.

Appellant also contends that by denying his petition for replacement counsel without conducting a hearing on the issue, the trial court committed reversible error. But this claim was waived when appellant entered his plea of guilty. Pre-trial procedural error is not cognizable on appeal from a plea of guilty in the absence of any

IV

██ Appellant's final claims surround the voluntariness and intelligence of his guilty plea. Appellant argues that considering all the circumstances surrounding his plea of guilty and the fact that it was motivated, in part, out of fear of the death penalty, his plea was invalid. The death penalty statute in effect at the time of appellant's conviction, 18 Pa.C.S.A. § 1311, was held unconstitutional thirteen months later in *Commonwealth v. Moody*, 476 Pa. 223, 382 A.2d 442 (1977). A well-reasoned decision to plead guilty to avoid an unconstitutional death penalty does not in and of itself render the guilty plea invalid. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The fact that appellant may not have pleaded guilty but for the opportunity to avoid the death penalty is insufficient to demonstrate the invalidity of the plea where counsel's advice that the plea would be to appellant's advantage was competent. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Accord, *Commonwealth v. Melton*, 465 Pa. 529, 351 A.2d 221 (1976); *Commonwealth ex rel. Henderson v. Maroney*, 448 Pa. 411, 293 A.2d 64 (1972), *cert. denied*, 409 U.S. 1117, 93 S.Ct. 922, 34 L.Ed.2d 701 (1973).

The record indicates that trial counsel properly explained to appellant that if he went to trial and was convicted of murder of the first degree, the death penalty would be possible. They further indicated, however, that capital punishment was unlikely since appellant's age constituted a mitigating circumstance under the statute. Appellant was also told that it was possible the death penalty was unconstitutional.

 Appellant argues that this advice was insufficient to support a well-reasoned decision. He claims that the threat of an unconstitutional death penalty made his decision one that was not knowing and intelligent. He urges that an intelligent decision was impossible in the absence of pre-trial determination of the constitutionality of

allegation that the plea was thereby rendered involuntary. See *Commonwealth v. Greer, supra.*

the death sentence. Thus, appellant argues that trial counsels' failure to attack the constitutionality of the death penalty by pre-trial motion rendered his guilty plea invalid. It is true that counsel did not challenge the constitutionality of the death penalty by pre-trial motion. But appellant has failed to demonstrate that his plea was induced by counsels' inaction. Rather, the record supports the conclusion that the plea was the product of a number of considerations. Appellant's plea was motivated by his belief that he would obtain parole at an earlier date by pleading guilty and counsels' advice that conviction of murder of the first degree was probable, as well as by his desire to avoid the threat of the death penalty. Thus, we cannot say that appellant's plea of guilty was induced by counsels' failure to attack the constitutionality of the death sentence pre-trial. Compare *Commonwealth v. Jones*, 477 Pa. 266, 383 A.2d 926 (1978) (claim of ineffectiveness must fail where appellant's guilty plea not induced by counsels' failure to interview two Commonwealth witnesses) with *Commonwealth v. Mabie*, 467 Pa. 464, 359 A.2d 369 (1976) (counsel ineffective where he failed to investigate prospective witnesses or examine potentially favorable records before advising appellant to plead guilty).

Judgment of sentence and order affirmed.

LARSEN, J., concurs in the result.