399 A.2d 104

**COMMONWEALTH of Pennsylvania**

**v.**

**Lewis Jerome LEE, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 16, 1979.
Decided March 16, 1979.

336

Berkowitz & Gutkin, Malcolm W. Berkowitz, Philadelphia, for appellant.

Joseph P. Cronin, Jr., Guy A. Messick, Asst. Dist. Attys., Media, for appellee.

Before ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

PER CURIAM:

The Court being equally divided, the judgments of sentence remain in effect.

LARSEN, J., filed an opinion in support of affirmance.

338

NIX, J., concurs in the result.

ROBERTS, J., filed an opinion in support of reversal.

MANDERINO, J., dissents in the result without an opinion.

EAGEN, C. J., and O'BRIEN, J., did not participate in the consideration or decision of this case.

OPINION IN SUPPORT OF AFFIRMANCE

LARSEN, Justice.

Appellant was arrested for the March 25, 1975 shooting death of the Glenolden, Pennsylvania, Police Chief, Robert Sparks, and charged, *inter alia*, with murder, criminal attempt to commit robbery on Chief Sparks, criminal attempt to commit robbery on an Officer Gerard Quinn (Sparks' companion at the time of the shooting), conspiracy to commit robbery, and crimes committed with firearms. Trial by jury commenced on December 8, 1975 in the Court of Common Pleas of Delaware County, Judge Domenic Jerome presiding. Following jury selection, opening arguments and the presentation of six Commonwealth witnesses, appellant changed his plea to guilty on the above charges. On December 9, 1975, a guilty plea colloquy was held before Judge Jerome who accepted appellant's plea. On August 9, 1976 appellant was adjudicated guilty of murder of the second degree and sentenced to life imprisonment on that conviction, which sentence was to run concurrently with the prison sentences on the other convictions.

Following sentencing, appellant retained new counsel who filed a Petition for Withdrawal of Guilty Plea. A hearing was held on this motion and, by order dated October 5, 1976, Judge Jerome denied appellant's petition to withdraw his plea of guilty. Direct appeal of the murder conviction was taken to this Court; the other convictions were certified to this Court from the Superior Court.

This Court has recognized that the petition to withdraw a guilty plea *after* sentencing would be a useful

procedure to employ as a sentence-testing device and, if permitted with any degree of liberality, would invite abuse. *Commonwealth v. Starr*, 450 Pa. 485, 301 A.2d 592, 594 (1973). Consequently, we have held that where the withdrawal of the guilty plea is sought after sentence is imposed, a showing of prejudice on the order of manifest injustice is required before withdrawal is properly justified. *Id.*, 450 Pa. at 490–91, 301 A.2d 594; *see Commonwealth v. Rivers*, 482 Pa. 184, 393 A.2d 441 (1978); *Commonwealth v. Zakrzewski*, 460 Pa. 528, 532, 333 A.2d 898 (1975); *see* Fed. Rules of Crim.P. Rule 32(d) and ABA project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty, § 2.1 at 9–10 (Approved Draft, 1968).

In the instant case, appellant enumerates eight issues which he asserts demonstrate such manifest injustice as to require allowance of his petition to withdraw his guilty plea. Many of these issues are substantially repetitive. In essence, appellant posits only three issues for our consideration:

1) Whether the factual basis for the charges appeared on the record;

2) Whether the nature of the charges and the relation of the facts to the crimes charged were adequately explained to appellant; and

3) Whether there was error on the part of both counsel and the court in failing to recognize, from the facts which were presented, what appellant contends was a "complete defense".[1]

The following dialogue, relevant to the above issues, between appellant and Judge Jerome was contained in the colloquy:

1. Although not raised as a separate issue, appellate counsel frequently points out that appellant was only sixteen at the time of the colloquy and that we should consider this factor in our determination of the issues. However, the record indicates that appellant's parents were with him and that the court went to great lengths to establish that appellant and his parents understood appellant's rights and the consequences of his pleading guilty.

THE COURT: Lewis Lee, you have heard [defense counsel] explain a lot of rights to you, and I realize you are sixteen years old. Now, is there any question you want to ask me concerning any of those rights?

DEFENDANT LEE: No, sir.

THE COURT: Have you consulted with your parents in your discussions with [defense counsel] before you entered this plea of guilty?

DEFENDANT LEE: Yes.

THE COURT: Now, do you understand that if I accept the plea of guilty to Murder Generally, that means I will have the obligation to find either Murder in the Second Degree or Murder in the Third Degree, because when you plead guilty to Murder Generally you are saying in effect that I committed some acts which are a form of criminal homicide; in other words, they're the result of my acts or somebody with whom I was associated that night, we call him an accomplice, Robert Sparks died.

Now, you would be responsible for his death, not as the person who fired the shot but as the person who was in the company of the person who fired the shot, and that is called a conspirator.

Do you understand what I am saying?

DEFENDANT LEE: Yes.

THE COURT: That you are not being charged with being the person who actually fired the bullet who caused the death of Robert Sparks. You're not being charged with that. Do you understand that?

DEFENDANT LEE: Yes.

THE COURT: And do you understand that your plea of guilty to murder admits, and I can assume that it is a fact—of course I have heard a good deal of evidence—but admits that you were attempting to rob, and while attempting to rob the death of a person, Robert Sparks, occurred. His death occurred not as a result of a shot fired by you but a shot fired by your accomplice. Do you understand that?

DEFENDANT LEE: Yes.

THE COURT: And do you understand that under the law that is sufficient to make you guilty of what is known as a felony murder and that is the felony being attempted robbery, the homicide being the death of Robert Sparks, combining the two even though you did not fire the shot you could be guilty of murder in the Second Degree.

Do you understand that?

DEFENDANT LEE: Yes.

THE COURT: It is also possible that under the evidence, instead of being guilty of Murder in the Second Degree, which a Murder in the Second Degree means it is a mandatory life sentence; instead of being guilty of Murder in the Second Degree, you could be found guilty instead of Murder in the Third Degree. Do you understand that?

DEFENDANT LEE: Yes.

THE COURT: Now, it will be the Commonwealth's obligation to convince me that this is a case of Murder in the Second Degree. Do you understand that?

DEFENDANT LEE: Yes.

THE COURT: Do you understand that once I accept the plea of guilty not only as to Murder but any of the other charges, you will be stopped, prohibited, you won't be permitted to ever say you weren't guilty; you will only be permitted to say, if you ever decide to appeal, the Judge sentenced me wrongly or I didn't voluntarily make the plea of guilty.

That is what you will be limited to, do you understand that?

DEFENDANT LEE: Yes.

THE COURT: So that you can't go back and attack identification, any statements or anything else leading to guilt? You will be stopped, do you understand that?

DEFENDANT LEE: Yes.

THE COURT: You will only be left, if you want to say that something happened here, you'll, you're only restricted to two things, and I want to make that abundantly clear, very clear to you. You can only say it wasn't really

my plea, it wasn't voluntary, I was forced to do it. You could say that. Or you could say the Judge didn't sentence me properly.

That's all that would be left, do you understand that?'

DEFENDANT LEE: Yes.

THE COURT: As we are talking I want you to understand that I intend to sentence you, whenever I sentence you, I intend to sentence you properly. And I am, as we go along, I am determining that you are voluntarily making this plea. So that the only two things that would be left for you to appeal upon, in my view you won't have anything to appeal from; you understand that?

DEFENDANT LEE: Yes.

THE COURT: Because I will not accept your plea unless I was satisfied that it were voluntary. Do you understand that?

DEFENDANT LEE: Yes.

THE COURT: Now, as to the Attempted Robbery, in each of the cases, that means that you, in one case with Officer Quinn at the point of a gun, put him in fear of serious injury by the use of that gun, with the attempt to take something from him, some personal possession or money or some items. That's what we call Attempted Robbery. Do you understand that?

DEFENDANT LEE: Yes.

THE COURT: That as far as the Attempted Robbery on Chief Sparks was concerned, you did not put the gun to Chief Sparks but you were the accomplice of the one who did, and therefore under the law you would be as guilty; and by being his accomplice, that would make you guilty of that Attempted Robbery also.

Do you understand that?

DEFENDANT LEE: Yes.

THE COURT: That is why I am willing to accept your pleas as to both, even though you put a gun only on Officer Quinn and did not put a gun to Chief Sparks. Under the law accomplice, you would be responsible. Do you understand that?

DEFENDANT LEE: Yes.

THE COURT: As to the crime of Conspiracy, that means that at some time, the time could be almost before or at any time, you and another decided to do the things you did that night, not to murder—it is not the allegation or the contention of the Commonwealth that you set out to murder somebody—it is their contention that you set out to rob, and that resulting from the robbery there occurred a death.

Do you understand that?

DEFENDANT LEE: Yes.

THE COURT: All right. So that there is this conspiracy which is an agreement between you and somebody else, the testimony has indicated to be one Floyd Wilson. That's what that means when I accept that plea.

Do you understand that?

DEFENDANT LEE: Yes.

THE COURT: And the final Indictment has to do with the crime of Violence Committed with a Firearm. And the crime of violence would here be attempted robbery, and of course the firearm is a pistol that was referred to and you were in possession of that pistol.

And I understand from the testimony of one of the witnesses that you took them to where the pistol was to be found, is that true?

DEFENDANT LEE: Yes.

THE COURT: Now, do you understand that when I accept your plea of guilty, these are the facts, these are the facts that are going to form the basis, the reason behind all of these charges; do you understand that?

DEFENDANT LEE: Yes.

■ As to the factual basis issue, it seems clear that the court, counsel and appellant fully understood the facts forming the basis for the convictions. In addition to the facts outlined in the colloquy, Judge Jerome heard six Commonwealth witnesses prior to appellant's changing his plea to guilty. These witnesses included Officer Quinn whose testi-

mony established that appellant and one Floyd Wilson approached him (Quinn) and Chief Sparks, the victim, on March 25, 1975. The two officers were off-duty and dressed in civilian clothes. As they were getting into their unmarked ca: appellant placed a gun in Quinn's stomach, pulled him cut of the car by his jacket and said "get out, okay, get out." Appellant saw Quinn's service revolver in Quinn's waist holster at that time, turned and fled the scene. Quinn fired several shots at appellant, then heard a loud noise behind him. When he turned back, Chief Sparks was clutching his bloody chest, victim of a gunshot wound inflicted by Floyd Wilson. Clearly, therefore, there was sufficient factual basis for Judge Jerome to be satisfied of appellant's guilt. *See Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77, 79 (1974).

Appellant's content n that neither the lower court nor trial counsel adequately explained the nature of the charges is similarly without merit. Of course, for a colloquy to demonstrate a defendant's understanding of the charges, the record must disclose that the elements of the crime or crimes charged were "outlined in understandable terms." *Commonwealth v. Ingram, supra,* 455 Pa. at 203–04, 316 A.2d at 80. The record herein discloses exactly that—the elements of the crimes charged were explained in understandable terms.

As to the murder charge, the prosecution's theory was felony murder. The trial court is required to outline the elements of felony murder, as well as the elements of the underlying felonies. *Commonwealth v. Holmes*, 468 Pa. 409, 364 A.2d 259 (1976). Felony murder, or murder of the second degree, is appropriate "when the death of the victim occurred while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b) (supp. 1978–79). Perpetration of a felony consists of "[t]he act of the defendant in engaging in or *being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse* by force or threat of

force, arson, burglary or kidnapping." 18 Pa.C.S. § 2502 Definitions (emphasis added) (supp. 1978–79).

█ It was explained to appellant in understandable terms that he was not being charged with firing the fatal shot, but was the accomplice in the company of the person who fired the shot; that the death occurred during an attempted robbery by reason of the act of appellant's accomplice and that, as a conspirator and accomplice, he would also be responsible for that death even though the shot was fired by appellant's accomplice. Since the Commonwealth stipulated that appellant's degree of guilt could rise no higher than murder of the second degree, it was not erroneous, as appellant argues, for Judge Jerome to fail to explain the "important elements of intent [to kill] and the element of malice." While demonstration of specific intent to kill and of malice are prerequisites to sustain a conviction of murder of the first degree, proof of these elements is not needed to support a finding of felony murder, *Commonwealth v. Yuknavich*, 448 Pa. 502, 295 A.2d 290 (1972); *Commonwealth v. Scott*, 469 Pa. 258, 365 A.2d 140 (1976); *cf. Commonwealth v. Tabb*, 477 Pa. 115, 383 A.2d 849 (1978).

Further, the elements of the underlying felonies were also adequately explained in understandable terms. A person is guilty of a robbery if, in the course of committing a theft, he threatens another with or intentionally puts him in fear of immediate serious bodily injury. 18 Pa.C.S. § 3701(a)(1)(ii) (supp. 1978–79). And, an act is deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or the commission. 18 Pa.C.S. § 3701(a)(2) (supp. 1978–79). Judge Jerome used readily understandable terminology falling squarely within the above definition of robbery as he described the crime of robbery of Officer Quinn (with appellant as the principal perpetrator) and of Chief Sparks (with appellant as accomplice). The gist of the conspiracy charge—the agreement to attempt to rob—was also explained. *See* 18 Pa.C.S. § 903(a)(1) (1973). Finally, as to a crime of violence committed with a firearm, Judge Jerome explained the act of

violence was the attempted robbery and that appellant had been in possession of the pistol stuck in Officer Quinn's stomach. *See* 18 Pa.C.S. § 6103 (1973).

On this record, we have no hesitancy in finding that appellant was fully, adequately, and in understandable terms, informed of the nature of all charges against him as well as the factual bases for those charges.

Finally, appellant argues that a factual basis for a "complete defense" appeared on the record and that, therefore, the court erred in accepting his guilty plea and in failing to explain the elements of the defense to him. He also alleges trial counsel was ineffective in failing to properly explain this defense to him, or to bring it to the court's attention. This claim is frivolous.

The so-called "complete defense" appellant now asserts is the defense of abandonment of, or withdrawal from, the criminal enterprise. Appellant contends that, since it is undisputed that he was fleeing the scene of the homicide as the shooting occurred, he had abandoned the enterprise and withdrew from the conspiracy and that, therefore, this defense should have been explained to him.

It is not error for a trial court to refuse to give jury instructions on the defense of abandonment or withdrawal where the facts simply do not support such a defense. *Commonwealth v. Spriggs*, 463 Pa. 375, 344 A.2d 880 (1975). Similarly, it is not error for a judge to fail to explain this defense during a guilty plea colloquy where the facts demonstrate that no such defense exists. *Commonwealth v. Sampson*, 445 Pa. 558, 285 A.2d 480 (1971) (Roberts and O'Brien, JJ. concurring, but, on this point, in agreement with majority). In *Sampson*, this Court addressed an almost identical situation (Appellant there fled the scene of attempted robbery scant seconds before fatal shooting by co-conspirator occurred.) Sampson argued that his guilty plea was not entered intelligently since it was accompanied by testimony establishing a complete defense and that it should have been rejected. We stated:

"Although there is a conspiracy to commit robbery, one of the conspirators will have a valid defense to a murder charge if the accomplice voluntarily abandons the scheme *appreciably before* the homicide occurs, giving his fellow conspirators sufficient time to follow his example." (Cites omitted) "We are of the opinion that appellant's testimony does not meet the criteria of this defense . . . [since his] testimony demonstrates his abandonment was well nigh simultaneous with the fatal shot." *Id.*, 445 Pa. at 563–564, 285 A.2d at 483.

That is, to escape responsibility for a fellow conspirator's act of homicide by defense of withdrawal "there must be an actual and effective voluntary withdrawal before the act in question has become so imminent that its avoidance is practically out of the question." *Id.*, 445 Pa. at 567, 285 A.2d at 485 (Roberts, J. concurring). This same result obtains under the Crimes of Code of 1972, 18 Pa.C.S. § 306 (1973), defining liability for conduct of another. "[A] person is not an accomplice in an offense committed by another person if: (3) he terminates his complicity *prior to* the commission of the offense *and* : (i) *wholly* deprives it of effectiveness in the commission of the offense; or (ii) gives *timely* warning to the law enforcement authorities or otherwise makes proper effort to prevent the commission of the offense." 18 Pa.C.S. § 306(f)(3)(i) and (ii).

The elements of this defense simply were not present in this case. Therefore, the failure to explain this defense did not render the guilty plea invalid.

I would affirm the judgments of sentence.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

Before accepting a plea of guilty, the trial court must conduct an on-the-record colloquy demonstrating that the guilty plea is voluntarily and understandingly tendered. Pa.R.Crim.P. 319(a). A proper colloquy must include, inter alia, an explanation, in understandable terms, of the nature

and elements of the charges against the accused. *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974). On this appeal from denial of appellant's post-sentence motion to withdraw his plea of guilty, the Opinion in Support of Affirmance erroneously concludes that appellant was fully and adequately informed of the nature of the charges against him. I dissent.

The most glaring inadequacy in the colloquy in this case is the failure of the trial court to explain the mens rea elements of the crimes to which appellant pleaded guilty. The Opinion in Support of Affirmance asserts that the failure of the trial court to include an explanation of intent and malice was not erroneous because "[w]hile demonstration of specific intent to kill and of malice are prerequisites to sustain a conviction of murder of the first degree, proof of these elements is not needed to support a finding of felony murder." 484 Pa. at 345, 399 A.2d at 109. The Opinion, however, has overlooked a basic legal principle. When appellant pleaded guilty to murder generally, he subjected himself to conviction of murder of the first, second or third degree. See *Commonwealth v. Chumley*, 482 Pa. 626, 634–635, 394 A.2d 497, 501 (1978). The fact that the Commonwealth agreed during the plea colloquy that their proof did not establish murder of the first degree did not erase the possibility that appellant could be properly convicted of murder of the third degree. Malice, of course, is an essential element of murder of the third degree. Moreover, the Opinion in Support of Affirmance ignores the fact that although no intent to cause death or serious bodily injury need be shown to establish guilt of felony murder, proof of the underlying felony is necessary. Attempted robbery, the underlying felony in this case, includes the element of intent to commit a theft.

The fact that the trial court did not adequately explain the nature of the charges against appellant in the on-the-record colloquy leads to the conclusion that the trial court improperly denied appellant's post-sentence motion to withdraw his plea of guilty. The Opinion in Support of Affirm-

ance correctly notes that post-sentence motions to withdraw should be granted only when withdrawal is necessary to correct a manifest injustice. *Commonwealth v. Starr*, 450 Pa. 485, 301 A.2d 592 (1973). Section 2.1(a)(ii)(2) of the ABA Standards Relating to Pleas of Guilty (Approved Draft 1968) provides that manifest injustice exists where "the plea was involuntary, or was entered without knowledge of the charge." In the absence of an on-the-record explanation of the nature of the charges against appellant, it cannot be concluded that the plea was entered voluntarily, intelligently, knowingly and understandingly. *Commonwealth v. Tabb*, 477 Pa. 115, 383 A.2d 849 (1978). Thus, the failure of the colloquy to adequately explain the elements of the charges against appellant establishes that withdrawal is necessary to correct a manifest injustice. I, therefore, would reverse the judgments of sentence and remand for a new trial.