J-S17004-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT MYERS, | |
| Appellant | No. 3472 EDA 2017 |

Appeal from the Judgment of Sentence Entered May 18, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008832-2015

BEFORE:  BENDER, P.J.E., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:               **FILED JUNE 05, 2019**

Appellant, Robert Myers, appeals from the judgment of sentence of 6-12 years' incarceration, followed by 5 years' probation, imposed following his guilty plea to possession with intent to deliver a controlled substance ("PWID"), conspiracy to commit PWID ("conspiracy-PWID"), and possession of a firearm prohibited ("PFP").  After careful review, we affirm.

> The following rendition of the facts was read into the record by the Commonwealth when … Appellant entered into an open guilty plea on January 6, 2017.  [*See* N.T., 1/6/17, at 18-24]. []Appellant agreed to the Commonwealth's rendition and that the foregoing facts were accurate.  []*Id.* at [24].
>
> On September 30, 2014, the Philadelphia police commenced an investigation into alleged narcotics activity occurring on 2237 South 20th Street.  On that date, police met with a confidential informant (CI) and instructed him to meet with … Appellant and engage in a controlled buy for the suspected narcotics.[6]  At approximately 5:57 p.m., police observed the CI enter the residence at 2237 South 20th Street.  The CI returned a short

time later and handed over suspected Oxycodone pills to the police. The CI indicated that … Appellant exchanged the pills for U.S. currency when they were inside the residence.[7]

[6] The CI was instructed to utilize controlled[-]buy money to purchase [O]xycodone pills from any individuals at 2237 South 20th Street. The CI was searched for contraband prior to each occasion that he interacted with … Appellant.

[7] The CI confirmed to the police that both … Appellant and his co-defendant, Jennifer Martin, engaged in the sale of pills to him or her on the second floor of the residence. All of the narcotics purchased by the CI were placed on property receipts and sent to a state police lab for analysis where they came back positive for Oxycodone and Percocets.

On November 7, 2014, the same police officers again utilized and instructed the CI to enter the same location to make another controlled buy. The CI returned with suspected Percocets exchanged in a transaction with … Appellant. The CI was used two more times in a similar manner on December 15, 2014 and January 5, 2015, and on each date the CI returned with suspected [O]xycodone pills after engaging in a transaction with … Appellant.[8]

[8] *See* footnote 7, *supra*.

The police obtained a search warrant for the residence at 2237 South 20th Street on January 6, 2015[,] and executed the search warrant on January 9, 2015. Authorities recovered various prescription pills, cocaine, marijuana, digital scales, Ziploc bags, and drug paraphernalia.[9] The search also yielded a Drug-O-tally sheet, a TD Bank statement and TD Bank check in the name of Jennifer Martin ([]Appellant's co-defendant), a TD Bank check in … Appellant's name, U.S. currency, and additional items.[10]

[9] The police recovered 13 round blue pills stamped K9, three round green pills stamped K8, one round green pill stamped OP80, and [an] additional significant amount of paraphernalia. They also recovered 9 clear Ziploc bags containing marijuana, 26 additional pills, 7 clear Ziploc bags containing cocaine, a Velocity digital scale, a U.S. Magnum scale, and additional Ziploc bags.

> <sup>10</sup> The authorities additionally recovered a PECO bill for 2237 South 20th Street, a cellular phone, residential lease, keys, and other documents.

After speaking with … Appellant, the police learned of a safe deposit box at a TD Bank.  []Appellant waived his 5th Amendment rights and signed a written statement consenting to a search of the safe deposit box, which yielded $66,811 in U.S. currency.<sup>11</sup>  A firearm was also recovered from the safe deposit box.<sup>12</sup>  All of the alleged narcotics recovered during these searches tested positively for marijuana, cocaine, Oxycodone, and Percocets. The firearm analysis confirmed that the weapon was operable.

> <sup>11</sup> The money located in the safe deposit box consisted of the following denominations: 267 $1 bills; 22 $5 bills; ten $10 bills; 66 $20 bills; six $50 bills; 14 $50 bills; and 643 $100 bills.

> <sup>12</sup> The firearm was a black Beretta handgun loaded with 15 9-milimeter rounds bearing serial number PX8533L. []Appellant informed the police that he did not own the firearm, but was holding it as collateral from another individual in connection to a drug sale.

Trial Court Opinion ("TCO"), 5/22/18, at 3-4.

The police arrested Appellant on August 17, 2015.  The next day, the Commonwealth charged him with PWID, conspiracy-PWID, aggravated assault, PFP, possession of a controlled substance, and possession of drug paraphernalia.  On January 6, 2017, Appellant entered an open guilty plea to PWID, conspiracy-PWID, and PFP.  On May 18, 2017, the trial court sentenced Appellant to 6-12 years' incarceration for PWID and a consecutive term of 5 years' probation for conspiracy-PWID.<sup>1</sup>  Appellant filed a timely post-sentence

_____

<sup>1</sup> Appellant received no further penalty for PFP.

- 3 -

motion seeking reconsideration of his sentence. On September 21, 2017, the trial court denied Appellant's post-sentence motion. Subsequently,

> [o]n October 6, 2017, the court permitted ... Appellant's trial counsel to withdraw and appointed new counsel.[2]
>
> > [2] []Appellant's trial counsel was Zachary Shaffer, Esq., and the temporarily appointed [a]ppellate counsel was Joseph Coleman, Esq.
>
> On October 16, 2017, ... Appellant filed a motion to proceed *pro se* and also filed a [m]otion for [r]ecusal.[3] On October 22, 2017, ... Appellant filed a [n]otice of [a]ppeal to the Superior Court. On November 7, 2017, ... Appellant filed a *pro se*[, court-ordered, Pa.R.A.P. 1925(b) statement]. On January 26, 2018, a new attorney[4] entered his appearance to represent ... Appellant and filed [an a]mended [Rule 1925(b) s]tatement....
>
> > [3] The court never had an opportunity to conduct a ***Grazier***[2] hearing because ... Appellant's new [privately-retained] counsel entered his appearance on January 26, 2018. The court denied the Motion for Recusal.
> >
> > [4] Douglas Dolfman, Esq.

TCO at 16. The trial court issued its Rule 1925(a) opinion on May 22, 2018.

Appellant now presents the following questions for our review:

1. Did the trial court err as a matter of law by accepting a non-negotiated guilty plea which was not voluntary?

2. Was trial counsel ineffective in representing [Appellant] by failing to file and litigate a motion to suppress contraband found in this case, and that officer[s] []lacked reasonable suspicion or probable cause to detain and arrest [Appellant,] and that the evidence seized was the fruit of the poisonous tree[?]

3. [S]hould [the trial court] have allowed trial counsel Zac Shaffer[,] Esquire[,] to also represent the co-defendant Jennifer

---

[2] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

Martin[,] thereby prejudicing [Appellant]'s right to a fair trial because of a conflict of interest not waived by either defendant[?]

4. Was trial counsel ineffective in failing to properly advise [Appellant] of offers in the case and giving [Appellant] the only choice but to plead open in the case and not informing [him] of the permissible range of sentences[?]

5. Was trial counsel ineffective in failing to state on the record and failing to explain to [Appellant] in an open guilty plea that he would lose certain fundamental rights by pleading guilty, including the right to carry a firearm, the right to vot[e,] and certain custody rights now and in the future[?]

Appellant's Brief at 6.

All of Appellant's claims have been waived, or are otherwise unreviewable at this time. "Upon entry of a plea of guilty, all grounds of appeal are waived other than challenges to the voluntariness of the plea and the jurisdiction of the sentencing court." **Commonwealth v. Chumley**, 394 A.2d 497, 504 (Pa. 1978). Furthermore, "allegations of ineffective assistance of counsel in connection with entry of the guilty plea will serve as a basis for relief only if the ineffectiveness caused [the] appellant to enter an involuntary or unknowing plea." **Id.** However, absent specific circumstances not present in the instant case, "claims of ineffective assistance of counsel are to be deferred to PCRA[3] review." **Commonwealth v. Holmes**, 79 A.3d 562, 576 (Pa. 2013). Accordingly, Appellant's second, fourth, and fifth claims are not cognizable on direct appeal. We so conclude without prejudice to Appellant's ability to pursue those claims in a future PCRA petition.

---

[3] Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq*.

In Appellant's first claim, he challenges the voluntariness of his guilty plea. Although this claim is cognizable on direct appeal, it has been waived.

> "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).... Where an appellant fails to challenge his guilty plea in the trial court, he may not do so on appeal. In order to preserve an issue related to the guilty plea, an appellant must either object at the sentence colloquy or otherwise raise the issue at the sentencing hearing or through a post-sentence motion.

***Commonwealth v. Tareila***, 895 A.2d 1266, 1270 n.3 (Pa. Super. 2006) (cleaned up).

Here, Appellant fails to direct this Court's attention to where his claim was preserved in the lower court. In our review of the record, we ascertain that Appellant did not raise a claim challenging the voluntariness of his plea below, at sentencing, in a post-sentence motion, or otherwise. Accordingly, we deem this claim waived.

Finally, in Appellant's third claim, he asserts that the trial court should not have permitted his trial attorney to represent both him and his co-defendant. As this claim does not implicate the legality of his sentence, and because no claim was preserved below regarding the voluntariness of his plea (assuming the instant claim could even be characterized as having affected the voluntariness of his plea), this claim has also been waived. ***Chumley***, ***supra***.

Judgment of sentence ***affirmed***.

President Judge Emeritus Ford Elliott joins this memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/5/19