J-S18007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID LEON JOHNSON | |
| Appellant | No. 811 WDA 2017 |

Appeal from the Judgment of Sentence Entered March 16, 2017
In the Court of Common Pleas of Cambria County
Criminal Division at No: CP-11-CR-0000864-2015

BEFORE:  STABILE, MUSMANNO, JJ., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                    **FILED JULY 12, 2018**

Appellant, David Leon Johnson, appeals from the March 16, 2017 judgment of sentence imposing life in prison without the possibility of parole for first-degree murder, abuses of a corpse, and related offenses.[1]  We affirm.

The trial court summarized the pertinent facts and procedural history:

> On March 31, 2015, Richland Township Detective Thomas Keirn ("Detective Keirn") was summoned by the watch commander to the township building in the pre-dawn hours.  The watch commander reported that an individual, later identified as [Appellant], had come to the station and indicated that he had killed his girlfriend inside their residence at 110 Parkside Drive in Richland Township.  Detective Keirn then interviewed Johnson about the events of the prior day and evening.  Johnson indicated that he had started smoking crack cocaine around 3:00 p.m. on March 30, 2015.  When [the victim, Allison Vaughn], arrived home after being out with friends at a local restaurant, [Appellant] demanded she provide him with her ATM PIN number [sic] so that

---

[1]  18 Pa.C.S.A. §§ 2502(a) and 5510.

he could secure more money to by crack cocaine. [Appellant] told Detective Keirn that he did not want to stab her, he just wanted to scare her into providing him with the PIN number [sic]. He also said that he had been thinking of doing this and had brought duct tape and the knife near him so he would be prepared prior to her arriving at the home.

After trying to secure Vaughn with duct tape so that she would not alert authorities while he procured money from the ATM for crack cocaine, a struggle ensued. During the struggle [Appellant] told Detective Keirn, that he stabbed the victim twice, 'Like maybe in the side of her neck like in the back--." Afterward, [Appellant] got money out of the ATM using Vaughn's card and PIN. He then went to downtown Johnstown and purchased more crack cocaine. [Appellant] then returned home, used the crack, drank some wine and took a shower according to his statement to Detective Keirn.

Johnson was charged by criminal information with; inter alia, criminal homicide of Vaughn on June 9, 2015. On July 10, 2015, the Commonwealth filed its notice of aggravating circumstances indicating its intent to seek the death penalty in this matter.

[…]

[Both parties waived the right to a jury trial.]

Thereafter and on what was nearing the eve of trial, [Appellant] made it known that he would like to have new counsel appointed to represent him in this matter. This court asked that the President Judge of Cambria County, Norman A. Krumenacker, III, hear this motion by [Appellant] so that this court would in no way be tainted by the evidence that may be presented. After hearing on March 2, 2017, Judge Krumenacker denied [Appellant's] motion for new counsel.

The guilt phase of the trial commenced on March 9, 2017. Closing statements were delivered on March 15, 2017 and the verdict rendered by the court on that same day. Notably, the court found [Appellant] guilty of the first-degree homicide and abuse of a corpse charge[s]. At what was to be the beginning of the penalty phase, the Commonwealth elected to withdraw its remaining aggravated circumstance and proceed to sentencing without seeking the death penalty.

Trial Court Opinion, 5/4/17, at 2-5 (record citations omitted).

Appellant filed timely post-sentence motions, which the trial court denied on May 4, 2017. Appellant filed this timely appeal on May 30, 2017. He raises four assertions of error:

1. Whether the trial court erred when it found that the evidence presented by the Commonwealth was sufficient as a matter of law to establish Appellant's guilty beyond a reasonable doubt to the charge of murder in the first degree, in that the Commonwealth did not present sufficient evidence against [Appellant] to establish every element of the charge?

2. Whether the trial court erred when it found that the verdict was not against the weight of the evidence presented at trial when the verdict directly contradicts Appellant's stated intent that was not to harm the victim, but to rob and immobilize the victim?

3. Whether the trial court erred in overruling Appellant's objection to the Commonwealth's pathologist, Ashley Zezulak, being determine [sic] as an expert in the field of pathology and forensic pathology despite the fact that she has not been board certified and had minimal experience at the time of the investigation of this case?

4. Whether the trial court erred when it denied Appellant's petition for dismissal and replacement of counsel when Appellant had good cause to make the request based on irreconcilable difference between himself and counsel?

Appellant's Brief at 2.

With his first two issues, Appellant challenges the weight[2] and sufficiency[3] of the evidence in support of his first-degree murder[4] conviction. He argues, based on his statement that he only wanted the victim's ATM PIN, that the Commonwealth failed to prove premeditation or specific intent to kill. Appellant ignores the fact that the record—including Appellant's own statement to police—establishes that Appellant stabbed the victim in the neck. Use of a deadly weapon on a vital body part is sufficient to prove specific intent to kill. *Commonwealth v. Padilla*, 80 A.3d 1238 (Pa. 2013), *cert. denied*, 134 S. Ct. 2725 (2014). We reject Appellant's weight and sufficiency arguments on the basis of the trial court's March 4, 2017 opinion.

Next, Appellant argues that the trial court erred in admitting the expert testimony Ashley Zezulak because she was underqualified. Rule 702 of the Pennsylvania Rules of Evidence permits expert opinion testimony from a witness whose "scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson." Pa.R.E. 702(a). Admission of expert testimony rests within the discretion of the trial court. *Commonwealth v. Serge*, 837 A2d 1255, 1260 (Pa. Super. 2003),

---

[2]   The well-settled standard of review for this issue is set forth in *Commonwealth v. Widmer*, 744 A.2d 745, 751–52 (Pa. 2000).

[3]   The well-settled standard of review is set forth in *Commonwealth v. Doughty*, 126 A.3d 951, 958 (Pa. 2015).

[4]   "A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing."  18 Pa.C.S.A. § 2502(a).

- 4 -

*affirmed*, 896 A.2d 1170 (Pa. 2006), *cert. denied*, 549 U.S. 920 (2006). "The standard for qualification of an expert is a liberal one." *Id.* Further, "[a] witness does not need formal education on the subject matter of the testimony, and may be qualified to render an expert opinion based on training and experience." *Id.* The Commonwealth produced evidence of Zezulak's experience performing autopsies for Forensic DX, working in the Allegheny County Medical Examiner's Office, and her extensive educational background. We reject Appellant's argument based on the trial court's July 6, 2017 opinion.

Finally, Appellant argues that the trial court erred in denying his pretrial motion for substitution of appointed counsel. As noted above, the trial court referred this motion to Cambria County President Judge Norman A. Krumenacker. Rule 122(C) of the Pennsylvania Rules of Criminal Procedure provides: "A motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons." Pa.R.Crim.P. 122(C). "To satisfy this standard, a defendant must demonstrate that he has an irreconcilable difference with counsel that precludes counsel from representing him." *Commonwealth v. Keaton*, 45 A.3d 1050, 1070 (2012). "The decision of whether to appoint new counsel lies within the sound discretion of the trial court." *Id.*

At the March 2, 2017 hearing, Judge Krumenacker examined Appellant's attorneys at length and found no irreconcilable differences and that they could represent Appellant effectively. Rather, Appellant, apparently upset that

counsel recommended a guilty plea,[5] "was disappointed with their honest evaluation of his case and the chances of being successful at trial based upon their review of the evidence, including his confession." Trial Court Opinion, 7/31/17, at 4. Appellant acknowledged that the attorneys were doing a good job. *Id.* The record supports the trial court's recitation of the pertinent facts, and we discern no abuse of discretion in the decision to deny Appellant's motion for substituted counsel, especially after the substantial amount of trial preparation counsel had already completed. We reject Appellant's argument based on the July 31, 2017 trial court opinion.

In summary, we have found each of Appellant's assertions of error to be without merit. We therefore affirm the judgment of sentence, and we direct that the trial court opinions of May 4, July 6, and July 31, 2017 be filed along with this memorandum.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/12/2018

---

[5] The prosecution did not take part in the hearing in order to avoid compromising Appellant's attorney-client privilege.

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,   : No. 0864-2015
     Plaintiff,                 :

                               : Post-Sentence Motions

  vs.                       :

DAVID LEON JOHNSON,          :
     Defendant.                :

## OPINION

Kiniry, J., _4_ May, 2017. This matter comes before the Court as a result of Defendant David Leon Johnson ("Johnson") filing Post-Sentence Motions. For the reasons set forth below, the Court **DENIES** Johnson's Motions.

Johnson raises three issues in his Post Sentence Motions. First, he argues that the Court should grant a Judgment of Acquittal based on his contention that the Commonwealth failed to produce sufficient evidence to justify the Court's guilty verdict as to the charge of first degree homicide. Second, in the alternative, Johnson asks the Court to vacate his sentence and order a new trial based on his argument that the verdict of guilty as to first degree homicide was against the weight of the evidence. Finally, Johnson argues that the Court erred in not granting his motion to sever Count 22 of the Criminal Information, Abuse of a Corpse. Johnson argues that evidence of this offense served as a non-statutory aggravating circumstance and was unduly prejudicial.

The Commonwealth argues that sufficient evidence was presented to the Court that Johnson was guilty of first degree homicide where Johnson stabbed the victim, Allison Vaughn ("Vaughn") in the neck with a knife three times and choked her. Additionally, the

1

Commonwealth argues that the weight of the evidence did support the verdict of guilty as to first degree homicide where the Court, as the trier-of-fact, was free to believe or disbelieve the words of Johnson's confession when taken together with the other evidence. Finally, the Commonwealth counters that the Court, in considering the evidence relating to homicide, could separate or even disregard the facts related to the Abuse of Corpse charge in its deliberations. Before discussing these issues, we will detail the factual and procedural background of this case in so far as it relates to the legal issues raised by Johnson.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 31, 2015, Richland Township Detective Thomas Keim ("Detective Keim") was summoned by the watch commander to the township building in the pre-dawn hours. Trial Transcript, 3/10/17, p. 72, ll. 10-19. The watch commander reported that an individual, later identified as Johnson, had come to the station and indicated that he had killed his girlfriend inside their residence at 110 Parkside Drive in Richland Township. T. T., 3/10/17, p. 72, ll. 11-14, 19. Detective Keim then interviewed Johnson about the events of the prior day and evening. Johnson indicated that he had started smoking crack cocaine around 3:00 P.M. on March 30, 2015. T.T., 3/10/17, p. 92, ll.12-13. When Vaughn arrived home after being out with friends at a local restaurant, Johnson demanded she provide him with her ATM PIN number so that he could secure more money to buy crack cocaine. Id. p. 97. Johnson told Detective Keim that he did not want to stab her, he just wanted to scare her into providing him with the PIN number. Id. p. 97, ll. 10-16. He also said that he had been thinking of doing this and had brought duct tape and the knife near him so he would be prepared prior to her arriving at the home. Id. p. 98, ll. 13-25.

2

After trying to secure Vaughn with duct tape so that she would not alert authorities while he procured money from the ATM for crack cocaine, a struggle ensued. Id. p. 101. During the struggle Johnson told Detective Keim, that he stabbed Vaughn twice, "Like maybe in the side of her neck like in the back—." Id. p. 101, ll. 20-25. Afterward, Johnson got money out of the ATM using Vaughn's card and PIN. Id. p. 103, ll. 5-14. He then went to downtown Johnstown and purchased more crack cocaine. Id. p. 103, ll. 15-25. Johnson then returned home, used the crack, drank some wine and took a shower according to his statement to Detective Keim. Id. p. 7, ll. 5-15.

Johnson was charged by Criminal Information with; inter alia, criminal homicide of Vaughn on June 9, 2015.[1] On July 10, 2015 the Commonwealth filed its Notice of Aggravating Circumstances indicating its intent to seek the death penalty in this matter. On the same date Johnson filed an Omnibus Pre-Trial Motion and Request for Bill of Particulars. A pre-trial conference was held on July 10, 2015. On July 14, 2015, the Court filed a case management Order in this case and set Pre-trial conferences for August 7, 2015, September 18, 2015, October 23, 2015, December 4, 2015, January 22, 2016 and March 4, 2016. The Court continued to schedule pre-trial conferences throughout 2016, holding one approximately every month to two months. On July 8, 2016, Johnson filed a Motion to Quash certain counts of the information an additional Omnibus Motion and a Motion to Quash Aggravating Circumstances. On August 5, 2016, the Defendant filed a Motion to Waive Jury Trial and Proceed by Trial by Judge. On August 10, 2016, the Court denied the Motions to Quash the Aggravating Circumstances and Motion to Quash certain counts of the information. Other issues, including the Waiver of a Jury

---

[1] The charge of Involuntary Deviate Sexual Intercourse was later filed by the Commonwealth but dismissed by Magisterial District Judge John W. Barron at the preliminary hearing on August 24, 2015.

3

trial were left undecided as the Commonwealth was determining whether it desired to waive its right to a jury trial.

Pre-trial status conferences continued to occur frequently in this matter through the autumn and early winter of 2016. On November 16, 2016, the Court granted a defense request for continuance of the matter to February 2, 2017 with a status conference being set for January 5, 2017. During this period of time, proposals regarding juror questionnaires and voir dire were discussed and motions practice regarding the same occurred. On February 22, 2016, the Commonwealth decided that it would in fact waive its right to a jury trial and proceed to trial by court in both the guilty and penalty phases of what was, at the time, an anticipated capital homicide trial. On this same date, after very extensive colloquy by the Court, the Defendant waived his right to a trial by jury in both phases of the trial.

Thereafter and on what was nearing the eve of trial, Johnson made it known that he would like to have new counsel appointed to represent him in this matter. This Court asked that the President Judge of Cambria County, Norman A. Krumenacker, III, hear this Motion by Johnson so that this Court would in no way be tainted by the evidence that may be presented. After hearing on March 2, 2017, Judge Krumenacker denied Johnson's Motion for New Counsel.

The guilt phase of the trial commenced on March 9, 2017. Closing statements were delivered on March 15, 2017 and the verdict rendered by the Court on that same day. Notably, the Court found the Defendant guilty of the first degree homicide and abuse of a corpse. We shall not list here the remainder of the verdict as Johnson's Post-Sentence Motions revolve around the verdict of first degree homicide and a pre-trial matter involving the failure of the Court to sever abuse of corpse charge. At what was to be the beginning of the penalty phase, the

4

Commonwealth elected to withdraw its remaining aggravated circumstance and to proceed to sentencing without seeking the death penalty.

Accordingly, on March 16, 2017 Johnson was sentenced to serve the remainder of his natural life incarcerated in a state correctional institution without the possibility of parole.

## DISCUSSION

### I. THE COMMONWEALTH PRESENTED SUFFICIENT EVIDENCE TO SUPPORT THE COURT'S VERDICT OF GUILTY OF FIRST DEGREE HOMICIDE.

The Pennsylvania Superior Court's standard of review for a challenge to sufficiency of the evidence is as follows:

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

Commonwealth v. Patterson, 940 A.2d 493, 500 (Pa. Super. 2007). In order to sustain a conviction for first-degree murder, the Commonwealth must prove, beyond a reasonable doubt, that a human being was unlawfully killed, that the accused was responsible for the killing, and that the accused acted with a specific intent to kill. 18 Pa. C.S. § 2502(a), (d). An intentional killing is a "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d).

5

The Pennsylvania Supreme Court has held that the period of time that premeditation is formed, "may be very brief; in fact the design to kill can be formulated in a fraction of a second. Commonwealth v. Rivera, 983 A.2d 1211, 1220 (Pa. 2009). The Court in Rivera described premeditation and deliberation as "a conscious purpose to bring about death." Id. The Pennsylvania Supreme Court has also indicated that it is appropriate for a fact-finder to infer that the use of deadly weapon on a vital part of a victim's body can demonstrate malice and a specific intent to kill. See Commonwealth v. Padilla, 80 A.3d 1238 (Pa. 2013). In Commonwealth v. Green, our Supreme Court explained that "Since one's state of mind is subjective, the specific intent to kill may be inferred from the perpetrator's conduct, including the intentional use of a deadly weapon in a vital part of the body of another human being." Commonwealth v. Green, 426 A.2d 614, 606-617 (Pa. 1981).

Johnson argues that in his confession that was heard by the Court he demonstrated by his own words his intent was merely to frighten Vaughn. Her death, he maintains, resulted only after the two struggled and that the whole event was chaotic and out of control. The case presented at trial, according to Johnson, supported a verdict of second degree homicide, but not first degree homicide because of the lack of any premeditation/specific intent to kill.

We believe that the Commonwealth has met its burden by its evidence that demonstrated that Johnson stabbed Vaughn three times in the neck, a vital part of her body. Assuming only for argument's sake, that the specific intent to kill her did not exist after the first blow was struck we are satisfied that it was present at some point between the first and third strike. The forensic evidence in this case demonstrated that the knife was plunged with such force that two knives broke during the attack on Vaughn. The contention that it was a chaotic event may have some

6

veracity, but the chaos was controlled by Johnson with violent and deadly force. We also wish to stress that at no point did the victim have any control over the events of that evening but rather it was Johnson who laid out the duct tape and prepared the knife. His intent may very well have been to frighten her before the attack began, but once it started, we are satisfied beyond a reasonable doubt that the specific intent to kill existed.

## II. THE COURT'S VERDICT WAS NOT AGAINST THE WEIGHT OF THE EVIDENCE.

"A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the factfinder." Commonwealth v. Tharp, 830 A.2d 519, 528 (Pa. 2003) (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice." Commonwealth v. Brown, 648 A.2d 1177, 1189–90 (Pa. 1994). Thus, only where the facts and inferences disclose a palpable abuse of discretion will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal. Commonwealth v. Houser, 18 A.3d 1128, 1133–34 (Pa. 2011)

In this case, because of the nature of the trial, we are faced with the proposition of determining whether the Court's own verdict was against the weight of the evidence. Put simply, our task is to determine whether the verdict of guilty of first degree homicide was "not dictated by the interests of justice." Without exhaustively reviewing the entire record of the trial that spanned a period of days, we will delineate our rationale for declining to award a new trial in this case.

7

As was indicated by both sides in their summations, this case was not a "whodunit." Johnson at no stage of the trial attempted to say that it was not he who caused the death of Vaughn. His confession, given hours after the life of Vaughn was taken, demonstrated that he was as a number of Commonwealth witnesses stated, "cool, calm and collected." As fact-finder, the Court found his confession to be credible in some ways; most notably that he killed Vaughn by stabbing her three times in the neck. His confession was corroborated by the physical and forensic evidence presented at trial. The dispute in this case hinged on the degree of criminal homicide that was appropriate. As fact finder, the Court believed the Commonwealth's evidence that Johnson struck three blows with two different knives into a vital part of Vaughn's body, her neck. For this reason, we found the Commonwealth's fact and forensic evidence to be credible that he had formed the specific intent to kill her. The Court believed that at some point during the attack Johnson's actions demonstrated the conscious purpose to end Vaughn's life. We have no reason to doubt that Johnson regrets those actions nor that he may have regretted them on the evening of Vaughn's murder. His regret does not however make the Court's verdict against the interests of justice. For these reasons, we decline to award Johnson a new trial.

III. THE COURT DID NOT ERR IN FAILING TO GRANT JOHNSON'S MOTION TO SEVER THE COUNT OF ABUSE OF A CORPSE AS IN RENDERING OUR VERDICT ON THE OTHER CHARGES; WE DID NOT CONSIDER THE FACT THAT JOHNSON COMMITTED A POST-MORTEM SEXUAL ACT WITH VAUGHN.

Johnson's final issue is that the Court's denial of his motion to sever the charge of Abuse of a Corpse from the remainder of the charges was in error. His claim is that hearing the charge in conjunction with the others operated as a non-statutory aggravating circumstance and that it was unduly prejudicial.

8

Because the Commonwealth did not ultimately seek the death penalty and no penalty phase occurred in this case, the argument that the charge of abuse of a corpse served as a non-statutory aggravating circumstance is moot. Having determined that this portion of Johnson's argument has no merit, we turn to the issue of whether or not the evidence of Johnson's post-mortem sexual contact with Vaughn was unduly prejudicial.

"It has long been held that trial judges, sitting as factfinders, are presumed to ignore prejudicial evidence in reaching a verdict." Commonwealth v. Irwin, 579 A.2d 955, 958 (Pa. Super. 1990) (citation omitted). "When the question of prejudice has arisen in the context of non-jury criminal trials, our courts have considered whether a judicial fact-finder is more capable of disregarding prejudicial evidence than a lay jury." Commonwealth v. Council, 421 A.2d 623, 625 (Pa. 1980). "We have generally adhered to the prevailing view that judicial fact-finders are capable of disregarding most prejudicial evidence." Id.

In reaching its verdict on first degree homicide and the remainder of the charges the Court did not consider the events that occurred to Vaughn post-mortem. Our rationale for our finding of first degree homicide is contained above. The Court unequivocally states that at no time during our deliberations as to the other charges did we consider the fact that Johnson admitted to post-mortem contact with Vaughn in arriving at our verdict. Thus, even assuming for argument's sake that the evidence was unduly prejudicial and merited separate trials (which the Court does not concede), the Court gave it no weight in arriving at its verdict on the other counts and therefore, this issue is without merit.

AS A RESULT OF THE ABOVE DISCUSSION, THE COURT ENTERS THE

FOLLOWING ORDER:

9

# IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,
Plaintiff,

vs.

DAVID LEON JOHNSON,
Defendant.

: No. 0864-2015
:
: Post-Trial Motions
:
:
:
:

FILED FOR RECORD
2017 MAY -4 PM 3: 47
CLERK OF COURTS
CAMBRIA COUNTY, PA

## ORDER

AND NOW, this ___4th___ day of May, 2017, it is hereby ORDERED, DIRECTED and DECREED, that Johnson's Post Sentence Motions are DENIED.

BY THE COURT:

_____ J.
Patrick T. Kiniry

COPIES TO:
- ☐ DEF.    ☐ C & F
- ☑ DA      ☐ SHERIFF
- ☐ ATTY.   ☐ OTHER
- ☐ PO
- ☑ PD
- ☐ JAIL
- ☐ JUDGE
- ☐ CA

10

# IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,  : No. 0864-2015
    Plaintiff,                 :

vs.                            :

DAVID LEON JOHNSON            :
    Defendant.                :

FILED FOR RECORD
2017 JUL -6 PM 3: 37
CLERK OF COURTS
CAMBRIA COUNTY, PA

## 1925 (b) OPINION

KINIRY, J. /6 July 2017. For purposes of this opinion, we draw the Honorable Superior Court's attention to the Court's Opinion and Order of May 4, 2017 for purposes of the first two issues raised by Johnson in his Concise Statement of Matters Complained of on Appeal filed on June 21, 2017. We shall rely on our rationale therein for the first two issues raised by Johnson (challenges to the weight and sufficiency of evidence). We also adopt the factual and procedural history of our Opinion of May 4, 2017 and incorporate it into this opinion. For purposes of the fourth and final issue, the Honorable President Judge Norman A. Krumenacker, III shall issue an opinion in conjunction with the instant opinion and we hereby incorporate the same herein. Below we shall address Johnson's third issue and will summarize the facts of record necessary to do so.[1]

---

[1] Prior to the non-jury trial in this case, trial counsel for Johnson indicated to this Court that Johnson wanted to address the Court relative to issues he was having with trial counsel. In order to preserve this Court's ability to sit as fact-finder in the scheduled non-jury trial, we asked that President Judge Krumenacker hear any issues pre-trial relative to potential problems Johnson had with his trial counsel. We thought it prudent to avoid presiding over such a proceeding on the eve of trial.

1

## Procedural and Factual History Related to Johnson's Third Issue

In his third issue, Johnson claims the Court erred in overruling the objection at trial to the admission of Ashley Zezulak as an expert in the field of pathology and forensic pathology. Johnson argues that she was not board certified and lacked significant experience at the time of the investigation of this case. Dr. Zezulak testified on March 10, 2017 during the Commonwealth's case-in-chief. She indicated that she was at the time of trial and the time of investigation employed by ForensicDx in Somerset County, Pennsylvania as a forensic pathologist. Trial Transcript, 3/10/17, p. 6, ll. 18-25, p. 7, l. 1. Her primary job duties at ForensicDX consisted of performing autopsies and writing reports related to them. T.T., 3/10/17, p. 7, ll. 4-5. Prior to working for ForensicDX, Dr. Zezulak worked in the Allegheny County Medical Examiner's Office in Pittsburgh. T.T., 3/10/17, p. 7, ll. 11-12. She detailed her extensive educational background, including advanced degrees, that led her to her current position. T.T., 3/10/17, pp.8-10, Commonwealth's Ex. 100. She also indicated that she has performed close to one thousand autopsies in her career with approximately a quarter being criminal homicides. T.T., 3/10/17, p. 10, ll. 10-16.

## Analysis

"Pennsylvania Rule of Evidence 702 allows for the admission of expert testimony where scientific, technical, or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue." Commonwealth v. Chmiel, 30 A.3d 1111, 1140 (Pa. 2011). Summarizing the law regarding the admission of a witness as an expert, the Superior Court has held:

2

> The standard for qualification of an expert witness is a liberal one. The test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine. A witness does not need formal education on the subject matter of the testimony, and may be qualified to render an expert opinion based on training and experience.

Commonwealth v. Serge, 837 A.2d 1255, 1259 (Pa.Super. 2002) (citations omitted). "The qualification of an expert witness is a matter within the sound discretion of the trial court and will not be reversed absent an abuse of discretion." Commonwealth v. Puksar, 740 A.2d 219, 226 (Pa. 1999) (citation omitted).

As well established case law bears out; there is no magic formula in Pennsylvania for expert qualification and admission. The Court could find no case that stood for the proposition that a board certification is required for a doctor to testify on matters relating to forensic pathology. Rather, the challenge to Dr. Zezulak's qualifications by Attorney Moore represented a tactic whereby she could sow doubts about the weight of the testimony in the mind of the fact finder, which was in this case, the Court. We are not persuaded, however, that it was error for the Court to admit her as an expert. We continue to find upon reflection and review of the record that the witness meets the standard borne out in the case law. We respectfully ask the Honorable Superior Court to affirm this decision.

BY THE COURT:

Patrick T. Kiniry, Judge

COPIES TO:
□ DEF.   □ C & F
☑ DA    □ SHERIFF
☑ ATTY.  □ OTHER
□ PO    → Moore + field (PD)
□ PD    _____
□ JAIL   _____
□ JUDGE  _____
□ CA

FILED FOR RECORD 2017 JUL -6 PM 3:37 CLERK OF COURTS CAMBRIA COUNTY, PA



IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF         *
PENNSYLVANIA,               *
                           *

vs.                           *    No. 0864-2015
                           *
                           *

DAVID LEON JOHNSON,      *    Opinion Pursuant to Rule of
                           *    Appellate Procedure 1925(a)(1)
        Defendant.          *
                           *

# Opinion Pursuant to Rule of Appellate Procedure 1925(a)(1)

**Krumenacker, P.J.:** David Leon Johnson (Johnson) appeals from his conviction and

sentence related to the murder of his live-in girlfriend, Allison Nicole Vaughn (Vaughn), on

March 30, 2015. On March 15, 2017, following a five day bench trial before the Honorable

Patrick T. Kiniry (Kiniry), Johnson was convicted of first degree homicide, abuse of a corpse,

and other charges relative to Vaughn's death.[1] On March 16, 2017, the Commonwealth

withdrew the death penalty and Judge Kiniry sentenced Johnson to life imprisonment without

the possibility of parole. Johnson filed Post-sentence Motions on March 27, 2017, and Judge

Kiniry denied those motions by Opinion and Order entered May 4, 2017.

Johnson filed a timely Notice of Appeal and complied with Judge Kiniry's order to

file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of

Appellate Procedure 1925(b). Johnson raises four allegations of error in his Concise

---

[1] The procedural and factual history is detailed in Judge Kiniry's May 4, 2017, Opinion and the Court relies on that summary.

Statement, the first three of which are directed at matters occurring before Judge Kiniry who has authored a Rule 1925(a) opinion addressing those allegations which was filed July 6, 2017. This Opinion will address Johnson's remaining allegation of error in which he contends that the Court erred in denying his oral Petition for Dismissal and Replacement of Counsel. For the following reasons the appeal should be dismissed.

# DISCUSSION

On February 22, 2017, the Commonwealth waived its right to have a jury trial and that same date, following an extensive colloquy, Johnson also consented to a bench trial to be held before Judge Kiniry. Shortly thereafter and approaching the trial date, Johnson made it known that he wished to have new counsel appointed to him for trial. Given that the matter was scheduled for a bench trial, Judge Kiniry determined that Johnson's request should be heard by another judge to avoid his being exposed to information normally protected by attorney-client privilege and to avoid exposure to defense strategy.

On March 2, 2017, this jurist conducted a hearing on Johnson's oral motion. The Commonwealth did not participate in the hearing other than to offer argument as to the legal standard Johnson had to meet and then agreed it was best if they absented themselves from the courtroom to avoid exposure to any attorney-client privileged information or trial strategy. N.T. 3/2/17 pp. 3-4. Following the testimony the Court concluded that while there was a difference of opinion between Johnson and his public defenders, Patricia Moore (Moore) and Michael Filia (Filia), those differences did not rise to the level of irreconcilable differences or impede counsels' performance such that Johnson would be deprived of effective assistance of counsel. Sealed N.T. 3/2/17 pp.6-12. Accordingly, the motion was denied by Order entered

that same date. In his fourth allegation of error Johnson alleges this decision was in error as he had established the existence of irreconcilable differences with counsel.

It is well settled that "[w]hile an indigent is entitled to free counsel, he is not entitled to free counsel of his own choosing." Commonwealth v. Cook, 597 Pa. 572, 610–11, 952 A.2d 594, 617 (2008); Commonwealth v. Chumley, 482 Pa. 626, 394 A.2d 497, 507 n. 3 (1978). The procedure by which an indigent defendant may seek to have counsel replaced is governed by Rule of Criminal Procedure 122(C) which, in pertinent part, provides "[a] motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons." Pa.R.Crim.P 122(C).

To satisfy this standard, a defendant must demonstrate he has an irreconcilable difference with counsel that precludes counsel from effectively representing him. Commonwealth v. Spotz, 562 Pa. 498, 756 A.2d 1139, 1150 (2000) (citing Commonwealth v. Tyler, 468 Pa. 193, 360 A.2d 617, 619 (1976)). A defendant's mere difference of opinion, desire to pursue a different strategy, or dislike of counsel is insufficient to meet this high burden. See, Commonwealth v. Wright, 599 Pa. 270, 297, 961 A.2d 119, 134 (2008). The decision whether to appoint new counsel lies within the trial court's sound discretion. Id. (citing Commonwealth v. Segers, 460 Pa. 149, 331 A.2d 462, 465 (1975)). In determining whether a request to change counsel should be granted, the trial court must weigh and balance a defendant's right to the counsel of his choice against the public's need for the efficient and effective administration of criminal justice. Commonwealth v. Brewington, 740 A.2d 247, 257 (Pa. Super. 1999); Commonwealth v. Warden, 335 Pa. Super. 315, 484 A.2d 151, 152 (1984).

Moore testified that she and co-counsel had: been on the case since 2015; conducted two preliminary hearings; been successful in having charges of involuntary deviant sexual

intercourse dismissed at the magistrate level during the second preliminary hearing during which the Commonwealth sought to add new charges; met with Johnson every Friday to discuss the case and answer any questions or concerns he had; had multiple conferences with Judge Kiniry and the Commonwealth; the majority of these conferences were followed by an on the record proceeding in which Judge Kiniry updated Johnson on the status of the case; that all expert reports were prepared and ready for trial; and that the defense was prepared for trial. N.T. 3/2/17 pp. 4-6. Johnson testified that: he met regularly with counsel, usually weekly, at which time they kept him updated on the case and answered any concerns he had; he met with counsel after each court conference or hearing; Moore had explained the possible advantages of a plea based upon the risk of trial, particularly in light of his confession to police; Moore explained his appeal rights and possible success based on statistics; and he agreed counsel was doing a good job and worked well with him. Sealed N.T. 3/2/17 pp. 2-7. Johnson indicated that his concerns were: he felt a guilty plea offer had been misrepresented to him as having a recommended sentence of 40 to 80 years when in court the Commonwealth indicated the sentence was 40 to 100 years; he felt counsel was disappointed that he would not accept the plea since it removed the risk of facing the death penalty; that he didn't like Moore telling him he was not showing remorse by going to trial when he was very sorry for the murder; and that he didn't like Moore telling him the evidence suggested he knew what he was doing at the time of the murder. Id.

Based upon Johnson's testimony the Court explained to him that it appeared he did not have irreconcilable differences with counsel but rather was disappointed with their honest evaluation of his case and the chances of being successful at trial based upon their review of the evidence, including his confession. Sealed N.T. 3/2/17 pp. 7-12.This determination was proper since Johnson's own testimony revealed he thought counsel was doing a good job in

their representation and revealed no real disagreement between him and counsel. Instead it revealed only a disappointment that counsel felt that, based upon their evaluation of the case, a plea was Johnson's best chance to avoid the death penalty when Johnson believed he had a better chance at trial. A review of the record reveals that Judge Kiniry would go on the record following each status conference, explain to Johnson what was discussed, ask Johnson if counsel was communicating with him, determine if counsel was answering his questions and concerns, asked if he had any concerns, and if he was satisfied with their representation. See, N.T. 12/30/15, 4/14/16, 7/5/16, 8/8/16, 11/16/16, 1/5/17, 1/13/17, 2/1/17, 3/7/17.[2]

At every opportunity Johnson indicated his satisfaction with counsel, including at the March 2nd hearing on his motion, and at no time in the proceedings before Judge Kiniry did Johnson indicate any dissatisfaction with counsel. Based upon the testimony at the March 2nd hearing Johnson failed to establish irreconcilable differences with counsel, but established only that he disagreed with their conclusions regarding his chances at trial and their honest appraisal of his case. This disagreement was insufficient to establish that counsel would not be able to effectively represent Johnson at trial in light of Moore's statement that the defense was ready and prepared for trial and the Court did not err in denying Johnson's motion. See, Commonwealth v. Keaton, 615 Pa. 675, 45 A.3d 1050 (2012) (trial court was justified in denying capital murder defendant's motion for change of court-appointed counsel when after hearing defendant's reasons for wanting different counsel and hearing counsel's side of the issue court concluded although defendant and trial counsel obviously disliked working together, there was no reason counsel was incapable of zealously representing defendant); Commonwealth v. Cook, 597 Pa. 572, 952 A.2d 594 (2008) (appointment of independent

---

[2] At the 1/5/17, 1/13/17, and 3/7/17 proceedings Judge Kiniry updated Johnson but did not inquire into his satisfaction with counsel.

counsel for defendant was not required, in absence of a level of hostility between defendant and appointed counsel that would amount to the denial of effective assistance of counsel); Commonwealth v. Wright, 599 Pa. 270, 961 A.2d 119 (2008) (trial court acted within its discretion in denying capital defendant's request for change in appointed counsel based on his allegation of a breakdown in communication; defendant's claim was not credible because many meetings involved court appearances or were otherwise documented, and trial court found that communication problems stemmed from defendant's lack of cooperation and refusal to follow counsel's advice); Commonwealth v. Floyd, 937 A.2d 494 (Pa. Super. 2007) (defendant was not entitled to change in trial counsel, though defendant disagreed with attorney's trial strategy; trial court, after conducting extensive inquiry into defendant's complaints determined that perceived deficits did not rise to level of irreconcilable differences); Commonwealth v. Knapp, 374 Pa. Super. 160, 542 A.2d 546 (1988) (defendant, who did not allege that irreconcilable differences existed between self and counsel, but merely claimed that relationship between defendant and counsel was "strained," was not entitled to removal of trial counsel and appointment of new counsel).

As there is no merit to Johnson's allegation of error, this appeal should be dismissed as to Johnson's fourth allegation of error.

**Respectfully submitted,**

Norman A. Krumenacker, III, P.J.

COPIES TO:
☐ DEF.    ☐ C & F
PS ☑ DA    ☐ SHERIFF
☐ ATTY.   ☐ OTHER
☐ PO
PS ☑ PD
☐ JAIL
☐ JUDGE
☐ CA

July 31, 2017

-Page 6 of 6-

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA          NO. 0864-2015

vs.

DAVID LEON JOHNSON

FILED FOR RECORD
2017 MAR -2 PM 3: 56
CLERK OF COURTS
CAMBRIA COUNTY, PA

\* \* \* \* \* \*

APPEARANCES:

FOR THE COMMONWEALTH: JOSEPH R. GREEN ESQUIRE

FOR THE DEFENDANT:          PATRICIA C. MOORE, ESQUIRE
                            MICHAEL A. FILIA, ESQUIRE

\* \* \* \* \* \*

ORDER

AND NOW, March 2nd, 2017, it is hereby ORDERED and DIRECTED that the

Defendant's Petition For Dismissal and Replacement of Counsel is denied in that the Court

feels the facts do not support that there is an irreconcilable difference between the

Defendant and Counsel. The Court has balanced the Defendant's right to Counsel and his

choice of Counsel in consideration of the file, the Attorneys' representations and the

necessary effort that has been done to prepare for trial, which it clearly has been conducted

in the best interest of the Defendant.

BY THE COURT:

_____
Norman A. Krumenacker, III
President Judge

COPIES TO:
☑ DEF.    ☐ C & F
☑ DA      ☐ SHERIFF
☐ ATTY.   ☐ OTHER
☐ PO      _____
☑ PD      _____
☐ JAIL    _____
☐ JUDGE   _____  Pamela M. Bishop, RMR
☐ CA      _____  Official Court Reporter
                           47th Judicial District